No. 13-50036

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee*

v.

IRA ISAACS

*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, No. 2:07-CR-732

**BRIEF FOR UNITED STATES**

ANDREW G. OOSTERBAAN
*Chief*
*Child Exploitation and Obscenity Section*
*United States Department of Justice*
*Criminal Division*

MICHAEL GRANT
*Trial Attorney*
*Child Exploitation and Obscenity Section*

MYTHILI RAMAN
*Acting Assistant Attorney General*
*Criminal Division*

KENNETH BLANCO
*Deputy Assistant Attorney General*
*Criminal Division*

JEFFREY ZEEMAN
*Trial Attorney*
*Child Exploitation and Obscenity Section*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF BAIL STATUS ...............................................................2

STATEMENT OF THE ISSUES...................................................................2

STATEMENT OF THE CASE ......................................................................3

STATEMENT OF THE FACTS ....................................................................4

SUMMARY OF ARGUMENT .....................................................................7

ARGUMENT .................................................................................................9

   I. The District Court Acted Within its Discretion by Precluding
   Defendant from Providing Expert or Opinion Testimony Regarding
   Whether the Videos had Serious Artistic Value....................................9

     A. Background ...................................................................................9

     B. Standard of Review.....................................................................13

     C. Analysis ......................................................................................14

     *1. The District Court Permissibly Ruled That Defendant Could Not
     Offer Expert Testimony*.....................................................................15

     *2. The District Court Permissibly Limited the Scope of Defendant's
     Lay Testimony*..................................................................................18

   II. The District Court Acted Within its Discretion by Sustaining The
   Government's Objections to Defendant's Repeated Attempts, During
   Closing Argument, to Offer Improper Commentary ............................21

ii

A. Background ........................................................................ 21

B. Standard of Review ........................................................... 25

C. Analysis ............................................................................ 26

III. The District Court Did Not Abuse Its Discretion By Correctly
Stating Ninth Circuit Law In An Answer To a Jury Question ............ 31

A. Background ........................................................................ 31

B. Standard of Review ........................................................... 32

C. Analysis ............................................................................ 32

*1. The District Court Did Not Err in Instructing the Jury on the
Definition of "Prurient"* ............................................................... 33

*2. The District Court Acted Appropriately in Answering the Jury's
Question* .................................................................................. 36

IV. The District Court Did Not Abuse its Discretion by Allowing the
Parties to Access Public Information Over the Internet Relating to
Prospective Jurors .................................................................... 38

A. Background ........................................................................ 38

B. Standard of Review ........................................................... 40

C. Analysis ............................................................................ 40

CONCLUSION ......................................................................... 46

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993) ........................................................................ *pasim*

*Hamling v. United States,*
  418 U.S. 87 (1974) ................................................................................. 14

*Johnson v. McCullough,*
  306 S.W.3d 551 (Mo. 2012) ................................................................... 47

*Kois v. Wisconsin,*
  408 U.S. 229 (1972) ............................................................................... 30

*Leer v. Murphy,*
  844 F.2d 628 (9th Cir. 1988) ................................................................. 22

*Maynard v. Nygren,*
  332 F.3d 462 (7th Cir. 2003) ................................................................. 46

*Miller v. California,*
  415 U.S. 15 (1973) ................................................................................. 30

*ParisAdult Theater I v. Slaton,*
  413 U.S. 49 (1973) ........................................................................... 17, 28

*Polykoff v. Collins,*
  816 F.2d 1326 (9th Cir. 1987) ....................................................34, 37, 38

*Ripplinger v. Collins,*
  868 F.2d 1042 (9th Cir. 1989) ..........................................................34, 35

iv

*Rosales-Lopez v. United States,*
    451 U.S. 182 (1981) ................................................................ 43

*State v. Bartanen,*
    121 Ariz. 454 (1979) ............................................................... 37

*Taylor v. Illinois,*
    484 U.S. 400 (1988) ................................................................ 22

*United States v. Alatorre,*
    222 F.3d 1098 (9th Cir. 2000) ................................................. 9

*United States v. Cantu,*
    185 F.3d 298 (5th Cir. 1999) ................................................. 40

*United States v. Carter,*
    410 F.3d 942 (7th Cir. 2005) ................................................. 23

*United States v. Freeman,*
    498 F.3d 893 (9th Cir. 2007) ........................................... 16, 20

*United States v. Garcia,*
    739 F.2d 440 (9th Cir. 2001) ................................................. 44

*United States v. Gray,*
    876 F.2d 1411 (9th Cir. 1989) ............................................... 32

*United States v. Guess,*
    745 F.2d 1286 (9th Cir. 1984) ............................................... 28

*United States v. Hayes,*
    794 F.2d 1348 (9th Cir. 1986) ............................................... 35

*United States v. Holmes,*
  229 F.3d 782 (9th Cir. 2000)................................................................20

*United States v. Isaacs,*
  359 F. App'x 875 (9th Cir. 2009) .........................................................10

*United States v. Jones,*
  132 S.Ct. 945 (2012)............................................................................36

*United States v. Lueth,*
  807 F.2d 719 (8th Cir. 1986)................................................................40

*United States v. Martinez,*
  77 F.3d 332 (9th Cir. 1996)..................................................................49

*United States v. McCall,*
  592 F.2d 1066 (9th Cir. 1979)..............................................................36

*United States v. McIver,*
  186 F.3d 1119 (9th Cir. 1999)........................................................36, 39

*United States v. Moreno,*
  102 F.3d 994 (9th Cir. 1996)................................................................23

*United States v. Ofray-Campos,*
  534 F.3d 1 (1st Cir. 2008) ....................................................................29

*United States v. Patel,*
  762 F.2d 784 (9th Cir. 1985)................................................................35

*United States v. Redlightning,*
  624 F.3d 1090 (9th Cir. 2010).........................................................14, 16

*United States v. Reidel,*
402 U.S. 351 (1971) ................................................................ 30

*United States v. Roth,*
354 U.S. 476 (1957) ................................................................ 30

*United States v. Scheffer,*
523 U.S. 303 (1998) ................................................................ 22

*United States v. Spillone,*
879 F.2d 514 (1989) ................................................. 27, 28, 29

*United States v. Stagliano,*
729 F. Supp. 2d 222 (D.D.C. 2010) ....................................... 18

*United States v. Washington,*
462 F.3d 1124 (9th Cir. 2006) ............................................... 33

*United States v. Yazzie,*
976 F.2d 1252 (9th Cir. 1992) ............................................... 14

*United States v. Young,*
470 U.S. 1 (1985) ................................................................... 28

*Unites States v. Lazarenko,*
564 F.3d 1026 (9th Cir. 2009) ............................................... 27

## STATUTES

18 U.S.C. § 1461 ....................................................................... 3

18 U.S.C. § 1462(a) ................................................................... 3

18 U.S.C. § 1465..................................................................................... 3

18 U.S.C. § 1466(a) ............................................................................... 3

18 U.S.C. § 1467.................................................................................3, 4

## OTHER AUTHORITIES

Fed. R. Evid. 702 advisory committee's note, 2000 amendments .......... 16

Lois Shepherd, *Terri Schiavo: Unsettling the Settled*,
   37 Loy. U. Chi. L.J. 297 (2006) ............................................................ 23

N.Y. City Bar Assoc. Comm. on Prof'l Ethics,
   Formal Op. 2012-2 (June 5, 2012)........................................................ 43

N.Y. Cnty. Law. Assoc. Comm. on Prof'l Ethics,
   Formal Op. 743 (May 18, 2011)............................................................ 42

Or. State Bar Ethics Comm.,
   Formal Op. No. 2013-189 (2013) ......................................................... 43

## RULES

Fed. R. App. P. 28(a)(9) ........................................................................ 21

Fed. R. Evid. 701................................................................................... 18

Fed. R. Evid. 702.............................................................................15, 16

Mo. S. Ct. R. 69.025(b) (2011) ............................................................. 43

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

─────────────────

No. 13-50036

─────────────────

UNITED STATES OF AMERICA,

*Appellee,*

v.

IRA ISAACS,

*Defendant-Appellant*

─────────────────

BRIEF FOR THE UNITED STATES

─────────────────

## STATEMENT OF JURISDICTION

This is an appeal by defendant Ira Isaacs from a final judgment of conviction in a criminal case. Final judgment was entered on January 16, 2013, Dkt. 263, and defendant timely filed a notice of appeal on January 18, 2013. App. Dkt. 2. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

1

## STATEMENT OF BAIL STATUS

The district court sentenced defendant to 48 months' imprisonment and denied his motion for bail pending appeal. On April 23, 2013, this Court granted defendant's motion for bail pending appeal, subject to appropriate conditions of release. App. Dkt. 23.

## STATEMENT OF THE ISSUES

1. Whether the district court acted within its discretion by precluding defendant from providing expert or opinion testimony regarding whether the allegedly obscene videos at issue had serious artistic value.

2. Whether the district court acted within its discretion by sustaining objections to defense counsel's repeated comments during closing argument about matters outside the record.

3. Whether the district court acted within its discretion by responding to a jury question by stating the law instead of, as defendant requested, repeating a non-material inaccuracy contained in the parties' agreed-upon jury instructions.

2

4. Whether the district court acted within its discretion by overruling defendant's objection to the parties' use of the Internet to access publically-available data on prospective jurors.

## STATEMENT OF THE CASE

In 2011, a federal grand jury in the Central District of California returned a superseding indictment charging defendant Ira Isaacs, doing business as "LA Media" and "Stolen Car Films," with engaging in the business of producing and selling obscene matter, in violation of 18 U.S.C. § 1466(a) (Count 1); transporting obscene material for sale or distribution, in violation of 18 U.S.C. § 1465 (Counts 2-4); transporting obscene material, in violation of 18 U.S.C. § 1462(a) (Count 5); and mailing obscene matter, in violation of 18 U.S.C. § 1461 (Counts 6-10). The indictment also included a forfeiture count pursuant to 18 U.S.C. § 1467. Dkt. 147.[1]

---

[1] "Dkt." refers to the district court's docket entry; "App. Dkt." refers to this Court's docket entry; "E.R." refers to defendant's excerpts of record; "Gov't. E.R." refers to the government's supplemental excerpts of record; and "Br." refers to defendant's brief.

3

Prior to trial, the government dismissed Counts 2, 4, and 6-8, and defendant proceeded to trial on the five remaining counts. On March 6, 2012, the district court declared a mistrial. Following a second trial, defendant was convicted on all five counts. He was sentenced to 48 months' imprisonment on all counts, to run concurrently to each other, to be followed by three years of supervised release, and a $10,000 fine. Dkt. 261. This timely appeal ensued.

## STATEMENT OF THE FACTS

Defendant's convictions for violating federal obscenity laws stemmed from his operation of a business that produced, purchased, advertised, sold, and distributed videos graphically depicting bestiality (*i.e.*, humans engaged in sexual acts with animals) and scatology (*i.e.*, sex acts incorporating the use of fecal matter). A rational jury considering the evidence in the light most favorable to the government could have found the following facts.

1. Sometime in 1999, defendant began doing business in Los Angeles and over the Internet as "L.A. Media" and "Stolen Car Films." Gov't E.R. 146. Defendant was the sole proprietor, operator, and owner

4

of, and made all decisions related to, the business. Gov't E.R. 147-48, 150, 152, 159-60, 238. In order to operate his business, defendant purchased full control, access, and creative use of numerous Internet domain names, including "scatmovies.com," "scatcinemax.com," and "stolencarfilms.com." Gov't E.R. 146-51. Defendant began operating his business by advertising and selling videos on the Internet via these websites, including videos depicting scat and bestiality. Gov't E.R. 160-62, 236-37. Once a video was purchased, defendant (and his employees acting on his behalf) would package the video and ship it to the purchaser using the United Parcel Service (UPS) or U.S. Mail. Gov't E.R. 152-53.

Over time, defendant expanded his business by operating Stolen Car Films as his personal production company, which he used to create, produce, and distribute his own version of scat videos. Gov't E.R. 164. Defendant was the creator, producer, and male actor in the "Hollywood Scat Amateurs" video series, including the videos "Hollywood Scat Amateurs Number 7" and "Hollywood Scat Amateurs Number 10," which he sold on his websites. Gov't E.R. 164, 249-51.

5

2. In July and October 2006, and again in January and March 2011, federal and state law enforcement agents, acting in an undercover capacity, purchased several videos from defendant's websites. Gov't E.R. 151-52, 170-75, 180, 183, 244-47. Defendant mailed the obscene videos to the agents at prearranged locations using UPS and U.S. Mail. Gov't E.R. 151-53, 166-67, 174. Four of these videos were the subject of the instant convictions.

"Mako's First Time Scat" (Count 2) is a video approximately two hours in length that depicts, among other things, a female vomiting, drinking urine and vomit, and eating feces during sex acts. Gov't E.R. 144. "Hollywood Scat Amateurs Number 7" (Count 3) is a video approximately one hour and twenty minutes in length that depicts, among other things, defendant instructing a female to drink urine, ingest feces, and perform oral sex on his penis (which had been smeared in feces), and defendant's placement of feces on the female's face and body. *Id.*; Gov't E.R. 249-50. "Japanese Doggy 3 Way" (Count 4) is approximately one hour and thirty-seven minutes in length that depicts, among other things, a female engaged in oral, anal, and vaginal

sex with two full-sized dogs, one of which also ejaculates in the female's mouth. *Id.* "Hollywood Scat Amateurs Number 10" (Count 5) is a video approximately one hour and thirty-five minutes in length that depicts, among other things, defendant and two females using and ingesting feces during various sex acts. *Id.*; Gov't E.R. 251.

## SUMMARY OF ARGUMENT

I. The district court reasonably exercised its discretion in refusing to qualify defendant as an expert witness, and it properly restricted defendant's lay testimony. The district court performed its gatekeeping function by assessing whether defendant's proffered testimony was both reliable and relevant. After an extensive *Daubert* hearing, in which defendant failed to demonstrate any expertise in art criticism or articulate any coherent methodology likely to assist the jury, the court ruled that defendant was not qualified to testify as an expert on art. The court also prohibited defendant from offering lay opinions that were not rationally based on his perception, but did permit him to share the purported artistic inspiration for the videos he produced.

7

II. The district court reasonably exercised its discretion in sustaining the government's objections to defense counsel's closing argument. A criminal defendant has the right to present closing argument, but that right is not unfettered, and district courts retain broad latitude to impose reasonable limitations on the scope of such argument. In exercising this broad discretion, the district court acted reasonably in barring defense counsel from referring to facts outside the record, misstating the applicable law, and raising arguments precluded by pretrial rulings.

III. The district court reasonably exercised its discretion when it responded to a jury question concerning the definition of "prurient interest" in a manner that was consistent with Ninth Circuit law.

IV. The district court reasonably exercised its discretion by allowing both parties to access publically-available information relating to prospective jurors over the Internet.

# ARGUMENT

## I.  The District Court Acted Within its Discretion by Precluding Defendant from Providing Expert or Opinion Testimony Regarding Whether the Videos had Serious Artistic Value.

### A. Background.

Following indictment, this case was assigned to Judge George H. King, Dkt. 6, but it was subsequently transferred to Ninth Circuit Chief Judge Alex Kozinski for trial. Dkt. 51. Prior to trial, Chief Judge Kozinski held a *Daubert* hearing at which defendant testified. At the conclusion of the hearing, Chief Judge Kozinski deemed defendant an expert and stated that he could testify as such. Dkt. 61.[2] On June 13, 2008, during the midst of trial, Chief Judge Kozinski declared a mistrial and recused himself. Dkt. 66. Subsequently, the Chief District Court Judge ordered the case returned to Judge King for future proceedings. Dkt. 67.

---

[2] A *Daubert* hearing is a proceeding in which the district court evaluates the admissibility of expert, scientific, or technical testimony or evidence. The district court has the discretion to decide the manner in which it conducts the *Daubert* hearing. *See United States v. Alatorre*, 222 F.3d 1098, 1103-05 (9th Cir. 2000).

Following the denial of defendant's motion to bar his retrial, *see United States v. Isaacs*, 359 F. App'x 875 (9th Cir. 2009), Judge King ordered the parties to confer and file a joint status report specifically addressing the expert testimony to be offered at trial. Dkt. 126. The parties filed the joint status report, in which defendant provided notice that he intended to testify as an expert in artistic value. Dkt. 128. The district court ordered the parties to submit "the qualifications of their proposed experts, as well as a topic-by-topic description of each proposed expert's testimony," and set a *Daubert* Hearing. Dkt. 129. In response, defendant filed a "Notice of Motion and Motion to Designate as Material Witness, Ira Isaacs." Dkt. 133.

Thereafter, Judge King held an extensive *Daubert* hearing on defendant's motion to designate himself as an art expert. Gov't E.R. 1-127. Defendant testified at the hearing and was questioned at length to determine if he possessed the necessary qualifications. *Id.* During the questioning, defendant testified that he had been in the traditional art world for more than 25 years, and had produced advertising material and marketing campaigns featuring fine art imagery in a commercial

10

art setting. Gov't E.R. 16. Defendant also testified that he had received a Bachelor of Arts degree in communications arts in 1977. *Id.* at 8. On cross-examination, defendant admitted that he had never been qualified as an expert in any subject in any court of law. *Id.* at 9. Defendant further testified that prior to being indicted, he did not try to open an art gallery, nor did he attempt to advertise the videos on art sites. *Id.* at 24-25.

Later, when questioned on the definition of art, defendant opined, "art is what artists do." *Id.* at 27. Defendant further opined that any self-proclaimed "art" produced by anyone who calls himself an artist should be considered art. Gov't E.R. 28-29. Defendant expressed the view that pornography should always be considered "art" because "somebody created it; they took some time to do this." Gov't E.R. 29. When questioned by the court on the "methodology" he would use to determine whether something had serious artistic value, however,

11

defendant was unable to answer the court's questions, or articulate any such methodology. *Id.* at 31-46.[3]

On March 2, 2011, the district court held that defendant's proposed testimony did not satisfy the required standards for expert testimony. Gov't E.R. 128-32. Specifically, the court held that defendant had not provided a methodology to determine whether something qualifies as art or has serious artistic value. Gov't E.R. 130-31. The court emphasized that defendant provided only vague and self-serving

---

[3] For example, defendant answered one of the district court's many queries about what methodology he used to determine whether something has serious artistic value as follows: "But I think you need a lot more than just [whether art generates reaction on the Internet]. I think you need—again, peer review would be nice—to see what other people, critics think and people who are in the art world, what they think, the critics basically. I think it could be serious art and nobody ever on the Internet—only one person. It's very hard for me to put in a box exactly, you know, what the particular piece is, if it changes. But I think, in theory, something could go from not so serious, and I think people can make it serious if it engages people. Sometimes an artist doesn't necessarily know he's creating. Sometimes he creates and things take its own life. But generally speaking, I think if you were going to do it in an academic type of way, I think studying what critics say, what the literature out there is about, what your experience as an artist can bring to it and what the viewers, you know, take away from it, I think is a good barometer of whether it's serious. How serious? You know, does it hit the bar? I think it does. But, you know, it's a tough one to be empirical—totally empirical about it because I don't know if there's a real right answer." Gov't E.R. 44-45.

definitions of art. Gov't E.R. 130. The court further held that to the extent defendant had attempted to offer a methodology, he possessed insufficient qualifications to support his testimony. Gov't E.R. 131. The court held that methodology offered by any layperson is irrelevant, and in order for testimony to be considered "expert" testimony, the methodology needs to be supported by expertise or qualifications. *Id.* The court ultimately held that defendant did not demonstrate the required expertise, and deemed defendant's proposed expert testimony inadmissible. *Id.* Although the court did not allow defendant to testify as an expert, it permitted him to testify as a lay witness regarding his intentions in creating the videos that defendant actually produced (i.e., "Hollywood Scat Amateurs Number 7" and "Hollywood Scat Amateurs Number 10"). Gov't E.R. 131-32.

## B. Standard of Review.

Trial courts have "wide discretion in [their] determination to admit [or] exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States*, 418 U.S. 87, 108 (1974). A district court's decision to exclude expert testimony is committed to its

13

broad discretion and reviewed for abuse of discretion. *See United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010). The admissibility of lay opinion testimony under Rule 701, like the admissibility of expert testimony under Rule 702, is committed to the sound discretion of the trial court, and the court's decision will be overturned only if it constitutes a clear abuse of discretion. *United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir. 1992) (internal quotation marks omitted).

### C. Analysis.

Defendant contends that the district court abused its discretion by precluding him from offering expert testimony (and limiting his lay opinion testimony) about whether the sexually explicit videos he produced, marketed, sold, and distributed lacked serious artistic value. Br. 36-43. Contrary to defendant, the district court's stated reasons for excluding this evidence—that defendant neither possessed sufficient expertise to offer expert testimony nor proposed a methodology that would assist the jury in its deliberations—reflect a sound and justifiable exercise of its discretion.

14

### *1. The District Court Permissibly Ruled That Defendant Could Not Offer Expert Testimony.*

Generally, an "expert" witness must be qualified as such by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. If expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," such testimony may be admissible so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* Typically, the determination of whether the expert's proffered testimony is reliable and relevant is made at a pretrial *Daubert* hearing, where the trial judge acts as a gatekeeper. *See United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007). The gatekeeping function requires the judge to assess whether "the reasoning or methodology underlying the testimony is scientifically valid," and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Redlightning,* 624 F.3d at 1111. The "more subjective and controversial

15

the expert's inquiry," however, "the more likely the testimony should be excluded as unreliable." Fed. R. Evid. 702 advisory committee's note, 2000 amendments.

In this case, the district court acted well within its broad discretion when it refused to allow defendant to provide expert testimony. First, the district court found that defendant was not qualified as an expert in art criticism by knowledge, skill, experience, training, or education. Gov't E.R. 131. This holding was supported by extensive evidence in the record reflecting defendant's lack of expertise in this arena. *See infra* at pp. 10-11; Gov't E.R. 9. Second, the district court found that defendant, even were he qualified to provide expert testimony, "provide[d] no explanation for how one can determine that a work has transformed from obscenity into art," thereby failing to demonstrate that his proffered "expert" opinion about the videos' serious artistic value was supported by any coherent methodology whatsoever, let alone a reliable methodology. Gov't E.R. 130-31. Defendant's inability to articulate such a methodology was particularly problematic in the obscenity context, where the films themselves "are

16

the best evidence of what they represent," and therefore, the question of whether a particular film is or is not legally obscene does not "lend[] itself to the traditional use of expert testimony." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 n.6 (1973).

The district court's discussion in *United States v. Stagliano*, 729 F. Supp. 2d 222, 230 (D.D.C. 2010), is instructive. There, the court precluded expert testimony concerning whether allegedly obscene materials lacked serious artistic value where, like here, the proposed expert's methodology was "so nebulous, subjective, and lacking in rigor and detail as to cast serious doubt, not only on the reliability of her opinion testimony, but on its usefulness to the jury as well." In so doing, the court noted that "[s]cientific' implies a grounding in the methods and procedures of science and 'knowledge' connotes more than subjective belief or unsupported speculation. Thus, to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Id.* Here, accordingly, the district court acted within its discretion, and in accord with Rule 702 and *Daubert*, in precluding

17

defendant from offering his proposed expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).[4]

### 2. The District Court Permissibly Limited the Scope of Defendant's Lay Testimony.

Defendant next contends (Br. 39-41) that the district court abused its discretion by refusing to allow him to provide his opinion regarding the "artistic value" of the movies. This claim fares no better than his expert-testimony challenge.[5]

Federal Rule of Evidence 701 requires lay opinion testimony to be "rationally based on the perception of the witness." Fed. R. Evid. 701;

---

[4] Defendant argues that the disqualification of Chief Judge Kozinski deprived him of the ability to call a psychiatrist, Dr. Mohar Nair, to testify on his behalf because Dr. Nair would be unavailable to testify in any future hearings. Br. 41, n. 1. Neither the government nor the district court, however, precluded Dr. Nair from testifying on defendant's behalf. To the extent defendant suggests that logistical or financial impediments to retaining an expert constitute grounds to allow an unqualified expert to testify in the original expert's stead, that argument lacks any legal support.

[5] Defendant repeatedly invokes the conclusion of the first trial in a hung jury, *see, e.g.*, Br. 42, 47, to suggest that the district court's decisions should be afforded less than ordinary deference by this Court because the first jury could not unanimously agree on a verdict. But defendant has not cited to, nor is the government aware of, any case supporting such a principle.

18

*see also United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007). Here, the district court ruled, in accord with this rule, that defendant could offer testimony regarding his goals, inspirations, and intended meaning for the videos he created, but could not share his lay opinion concerning the artistic nature of videos he did not create. Gov't E.R. 132.[6]

In all events, both in the district court's order and at trial, defendant was granted wide latitude to expound on his views regarding art and his intentions when creating the videos he produced, and the jury was well-versed in defendant's perspective on these topics during its deliberations. In its order, the district court determined that, "given its inherent subjectivity, and the vast range of considerations a viewer of art might consider determinative in assessing a work of art,

---

[6] *United States v. Holmes*, 229 F.3d 782 (9th Cir. 2000), does not support defendant's contention that, notwithstanding his lack of expertise in art criticism, the court abused its discretion by precluding him from informing the jury of his own personal, self-serving opinion regarding whether the charged videos constituted "art." As even defendant himself concedes, *Holmes* is "not directly on point." Br. 40. The issue in *Holmes* was whether the prosecution's lay witness had sufficient prior contact with the defendant in order to identify him as the perpetrator of a bank robbery. *Holmes*, 229 F.3d at 788-89.

19

testimony concerning the artist's goals, inspirations, and intended meaning is at least relevant." Gov't E.R. 132. Defendant was thereby permitted during trial to testify that the videos he produced were inspired by shock artists and were consistent with that artistic tradition. Defendant, for example, provided extensive commentary (with accompanying photographic exhibits) on shock art and his purported artistic influences, Gov't E.R. 198, 209-19; discussed his purported desire for viewers of his videos to question the basic essence of what art is, Gov't E.R. 201; commented on the inspiration he claimed to draw from Franz Kafka, including a narrative summary of a Kafka novel, Gov't E.R. 203-08; and even offered his thoughts on classical music, citing J.S. Bach as an inspiration for his work, Gov't E.R. 220. In sum, defendant was permitted to convey to the jury his opinion that the videos he produced depicting, among other things, women consuming feces while engaging in sex acts were the artistic equivalent of works by Robert Rauschenberg, J.S. Bach, Franz Kafka, Marcel Duchamp, Kiki Smith, Piero Manzoni, and Chris Ofili. The jury chose to instead credit the voluminous evidence (in particular, the videos themselves, but also

the manner in which the videos were marketed and distributed, which in no way suggested any artistic purpose) to the contrary in concluding that all of the charged videos lacked serious artistic merit.[7]

## II. The District Court Acted Within its Discretion by Sustaining The Government's Objections to Defendant's Repeated Attempts, During Closing Argument, to Offer Improper Commentary.

### A. Background.

On the last day of trial, prior to the jury's arrival in open court, the government, cognizant of defense counsel's reference to "consenting

---

[7] Defendant also claims that by "unnecessarily restrict[ing] defendant's testimony, . . . essentially rendering [it] useless[,]" the district court violated his constitutional right to present a defense. Br. 42. Even were the Court to entertain this claim despite defendant's complete failure to adequately present it, *see* Fed. R. App. P. 28(a)(9) and *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ("[i]ssues raised in a brief which are not supported by argument are deemed abandoned."), it should reject it. A criminal defendant does not "have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions . . . "). Garden-variety evidentiary rulings that exclude inadmissible evidence do not *ipso facto* violate this right. *See United States v. Moreno*, 102 F.3d 994, 998 (9th Cir. 1996); *United States v. Carter*, 410 F.3d 942, 951-52 (7th Cir. 2005) ("[s]imply stated, a criminal defendant does not have an absolute, unrestrainable right to spew irrelevant—and thus inadmissible— testimony from the witness stand.").

adults" during closing argument at the first trial, asked the court to provide the jury with an additional instruction relating to consent and the term "consenting adults." Gov't E.R. 258-60. The court denied the government's request, but it advised defense counsel "not [to] argue outside the evidence." Gov't E.R. 259.

Following the jury's arrival, the trial resumed. During the course of defense counsel's roughly hour-long argument, counsel made repeated references to the following matters unrelated to the contents of the videos defendant produced and/or distributed:

- "Thomas Jefferson fathered children out of wedlock with his black slaves, and what is this case all about? It's about hypocrisy in the government with respect to the United States of America." Gov't E.R. 282 [no objection];

- "We talk about free speech under the First Amendment. Every country, or most countries, have the equivalent of the First Amendment, free speech, but then --," Gov't E.R. 283 [government objection sustained];

- " . . . if you happen to publish a picture of Mohammed or write a book that criticizes a particular religion or something, in some countries even though they say, 'we have freedom,' you can get executed --," Gov't E.R. 284 [government objection sustained];

22

- "Any why was he not using his correct address? Because we all know what happened to Larry Flynt during an obscenity trial in Georgia. During a recess he was shot along with his lawyer. Why? Because there are people in this country who don't like what people like Mr. Isaacs --" Gov't E.R. 286 [government objection overruled];

- "You know, Congress is not incapable for meeting very quickly on a moment's notice. You remember a couple of years ago when Mr. Schiavo --," Gov't E.R. 289 [government objection sustained];[8]

- "I think this [that Los Angeles is the pornography capital of the country] is a matter of common knowledge that you can sort of take judicial notice of. We have the convention, but that primarily deals with the retail operators, the ones with the retail bookstores not the distributors by Internet an --" Gov't E.R. 292 [government objection overruled];

- "We see [evolving standards] in other areas of law. We see that, for example, in the area of gay rights. There was a time --," Gov't E.R. 302 [government objection sustained]

- "For example, years ago, just by way of example, it would be considered shameful for a couple to live together not married," Gov't E.R. 302 [government objection sustained];

---

[8] In 2003, Terri Schiavo's feeding tube was removed after she had been in a vegetative state for approximately 13 years. The Florida state legislature then convened, on short notice, to enact "Terri's Law," giving the state governor the authority to order Schiavo's feeding tube reinserted. Lois Shepherd, *Terri Schiavo: Unsettling the Settled*, 37 Loy. U. Chi. L.J. 297, 307-08 (2006). After several legal challenges, Pasco-Pinellas Circuit Judge George Greer ordered the feeding tube permanently removed. *Id.* at 310. Schiavo died in 2005. *Id.* at 311.

23

- "I think a therapist might say to you that a lot of people have secret thoughts and ideas --," Gov't E.R. 311 [government objection sustained];

- "they would watch [the videos] because it makes them feel that they are not alone in this universe, that other people have and share the same bizarre or weird sexual feelings that they do, and that is a comfort to these people. These people --," Gov't E.R. 314 [government objection sustained];

- "I think this is a matter of common knowledge, but if you had a newspaper, say the L.A. Times, and it has a front page story of a soldier . . . with a body part from an Afghan or a Taliban fighter or an Al Qaeda fighter or you have evidence of abuse by the U.S. military—whatever it is in—and you're portraying that because you're a documentary filmmaker or whatever you are not to be condemned because you are showing something that is real." Gov't E.R. 323 [government objection overruled].

The government objected to ten of these references on the grounds that they were improper references to facts from outside the record, and the district court sustained seven of those objections.

Three objections to defendant's closing were sustained on other grounds, and one additional objection was overruled. Defendant argued during closing that ". . . this is mentioned in the jury instruction about the First Amendment. The promise of the First Amendment is that Congress shall make no law abridging free --," Gov't E.R. 283. The

24

district court sustained the government's objection, noting that it would instruct the jury, not counsel. Gov't E.R. 283. Next, defendant invoked during closing the government's motive for prosecuting defendant by commenting on the purportedly "political" nature of the case. Gov't E.R. 134-35. The government objected, noting that this line of argument was precluded by agreement of the parties and via pretrial ruling, and the district court sustained the objection. *Id.* Finally, the government successfully objected to the following statement from defendant's closing: "so the question is does an average person have a morbid, degrading, or unhealthy interest in sex? You're going to have to figure this one out, and it's kind of a conundrum as to how you're going to deal with that." Gov't E.R. 326. The district court ruled that this assertion contradicted the court's instruction to the jury and misstated the law.

### B. Standard of Review.

A district court's limitation on the scope of closing argument is reviewed for an abuse of discretion. *Unites States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) (citing *United States v. Spillone*, 879 F.2d 514, 518 (9th Cir. 1989)).

25

## C. Analysis.

Defendant contends (Br. 43-45) that the district court violated his "right to present closing argument" by sustaining purportedly "improper objections by the prosecution and by the Court intervening to help the prosecution and to disrupt the flow of the defense argument." Br. 43. Contrary to defendant's argument, the district court's rulings were appropriate and provide no basis for disturbing his convictions.

1. "It is well-established that the trial judge has broad discretion in controlling closing argument. The ruling of the trial judge will not be disturbed on appeal, absent an abuse of discretion." *United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir. 1984). Indeed, the trial court has a duty to prevent improper closing arguments. *Spillone*, 879 F.2d at 518 (citing *United States v. Young*, 470 U.S. 1, 9-10 (1985)). In *Spillone*, this Court concluded that the trial court did not abuse its discretion by interrupting closing on seven occasions, during which the trial court instructed counsel not to interject his personal opinion into the

argument and prohibited counsel from using anecdotes and making analogies to well-known cases. *Id.* at 518.[9]

*Spillone* is directly on point: here, the district court did not abuse its discretion by properly sustaining the government's objections, seven of which asserted as grounds defendant's attempt to reference facts outside the record. *See also, e.g., United States v. Ofray-Campos*, 534 F.3d 1, at \*33 (1st Cir. 2008) (holding that judicial interruption of defendant's closing statement neither prejudiced defendant nor demonstrated judicial bias, where "interruptions were almost invariably imposed for a proper purpose.").

Three other objections to defendant's closing were sustained in accordance with governing law. First, defendant's statement during closing that ". . . this is mentioned in the jury instruction about the First Amendment. The promise of the First Amendment is that Congress shall make no law abridging free --," usurped the role of the

---

[9] Defendant's argument here is even weaker than Spillone's. There, the district court interrupted counsel on, apparently, a *sua sponte* basis, rather than in response to objections from the government. Moreover, here the court overruled four of the government's fourteen objections to closing, signaling that it was not merely rubber-stamping those objections, but instead independently considering each on its merits.

district court, contradicted existing law and would only have served to confuse the jurors. Indeed, the Supreme Court has long held that obscene material is not protected by the First Amendment. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 53 (1973); *Miller v. California*, 415 U.S. 15, 23-25 (1973); *Kois v. Wisconsin*, 408 U.S. 229, 230 (1972); *United States v. Reidel*, 402 U.S. 351, 354 (1971); *United States v. Roth*, 354 U.S. 476, 485 (1957). Second, defendant's invocation of the government's motive for prosecuting defendant, Gov't E.R. 134-35, was precluded by agreement of the parties and via pretrial ruling. *Id.* Finally, defendant's statement that "so the question is does an average person have a morbid, degrading, or unhealthy interest in sex? You're going to have to figure this one out, and it's kind of a conundrum as to how you're going to deal with that," Gov't E.R. 326, contradicted the court's instruction to the jury and misstated the law. Whether an "average person" *has* a "morbid, degrading, or unhealthy interest in sex" is of no relevance to determining whether the materials at issue *appealed* predominantly to such an interest, as previously instructed by the district court. *See* Gov't E.R. 277. Moreover, no evidence was

introduced at trial concerning the sexual interests maintained by an "average person."

2. Defendant, for his part, does not actually address the district court's stated bases for sustaining the government's objections to his closing arguments. He does not contend, for example, that any of the government's objections that were sustained for improperly referring to matters not in evidence were actually supported by the evidence—nor could he, because they were not. Defendant instead contends that the district court "came up with frivolous arguments" because the court would not allow defendant to rely upon so-called "general knowledge" facts, mentioned for the first time during closing, in support of his argument. Br. 44. But "[a]rguments must be based on the evidence at trial," *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989), *cert. denied*, 495 U.S. 930 (1990), and the district court's rulings faithfully adhered to this principle.

Defendant also contends that, because the government used a quote from Thomas Jefferson at the conclusion of its closing argument, he should have been granted *carte blanche* to not only discuss Thomas

29

Jefferson—something he did, twice, without objection, Gov't E.R. 282-84—but also to reference a host of other unrelated evidence from outside the trial record. Notably, defendant did not object at trial to the Thomas Jefferson quotation, and even now concedes that the government's use of that quotation was appropriate. Br. 45.[10]

Even assuming, *arguendo*, that the Thomas Jefferson reference was improper, had defendant successfully objected, the appropriate remedy would have been to instruct the jury to disregard the government's comment, rather than, as defendant now suggests, permitting defendant to reference during his closing argument a host of additional facts, entirely unrelated to Thomas Jefferson, without any basis in the record. *See United States v. Washington*, 462 F.3d 1124, 1136 (9th Cir. 2006) (holding that "[a] judge's prompt corrective action in response to improper comments usually is sufficient to cure any problems arising from such improper comments," where the district court instructed the jury to disregard prosecutor's improper remarks).

---

[10] The quotation was used by the government as a rhetorical device rather than as an avenue to introduce facts not in evidence or to provide improper legal direction to the jury, so it was not, in fact, objectionable.

The district court, therefore, did not abuse its discretion when it sustained the government's objections during closing.

### III. The District Court Did Not Abuse Its Discretion By Correctly Stating Ninth Circuit Law In An Answer To a Jury Question.

#### A. Background.

Prior to closing argument, the district court instructed the jury that "an appeal to 'prurient' interest is an appeal to a morbid, degrading and unhealthy interest in sex." Gov't E.R. 277. During its deliberations, the jury presented two notes to the court. One of the notes asked, "[u]nder the prurient interest must all three criteria be met, 'morbid, degrading, and unhealthy' interest in sex[?]" Gov't E.R. 331-32. The court informed the parties that it intended to rule that those terms were disjunctive rather than conjunctive. Gov't E.R. 333. Defendant objected, but did not assert that the revised instruction was defective. Instead, defendant argued that changing the instruction at that juncture would implicate the "integrity of the closing argument." Gov't E.R. 335. The court overruled defendant's objection and instructed the jury, based on existing Ninth Circuit precedent that, "[t]he words 'morbid,' 'degrading,'

31

and 'unhealthy' that you ask about are not separate criteria; they are descriptive terms that describe what is a prurient interest. Thus you need not find that the material satisfies all of these descriptive terms." Gov't E.R. 332, 341-42 (citing *Polykoff v. Collins*, 816 F.2d 1326, 1336 (9th Cir. 1987)).

## B. Standard of Review.

"Challenged error in the language of the trial judge's jury instructions will justify reversal only if abuse of discretion is shown." *United States v. Patel*, 762 F.2d 784, 790 (9th Cir. 1985). The standard of review is the same when reviewing supplemental jury instructions given in answer to a jury's question. *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987).

## C. Analysis.

Defendant contends that the district court improperly "undermined the effect of closing argument" by changing the definition of "prurience" after the defense concluded its closing. Br. 45. This contention lacks merit. Courts must always accurately state the law to the jury in response to a question, even if a defendant relied, during

32

closing argument, on an alternative prior instruction. *See United States v. McIver*, 186 F.3d 1119, 1131 (9th Cir. 1999) (abrogated on other grounds by *United States v. Jones*, 132 S.Ct. 945 (2012)); *see generally United States v. McCall*, 592 F.2d 1066, 1068 (9th Cir. 1979).

### 1. The District Court Did Not Err in Instructing the Jury on the Definition of "Prurient."

The district court's original definition of prurient was based on the parties' joint submission, which, in turn, derived that definition from § 2.63 of the Fifth Circuit Pattern Criminal Jury Instructions (2001). In response to the jury's question, the district court conducted further research and discovered that this Court had twice approved an instruction of prurient interest that construed the descriptive terms in the disjunctive, rather than the Fifth Circuit's conjunctive construction. *See Ripplinger v. Collins*, 868 F.2d 1042, 1054 (9th Cir. 1989); *Polykoff*, 816 F.2d at 1336 (9th Cir. 1987). In *Polykoff*, the plaintiffs challenged Arizona's obscenity statute as overbroad based on the Arizona Supreme Court's construction of the term "prurient interest" in *State v. Bartanen*, 121 Ariz. 454 (1979); *see* 816 F.2d at 1334-35. In *Bartanen*, a jury

33

instruction defined "prurient interest" as "an unhealthy, unwholesome, morbid, degrading, or shameful interest in sex, a leering or longing interest." *Id.* at 1336. The *Bartanen* jury, as in this case, requested clarification on whether *all* of the following adjectives had to apply: unhealthy, unwholesome, morbid, degrading, and shameful. *Id.* The *Bartanen* trial judge "replied that the descriptive terms in the instructions are set forth in the alternative, and noted that the instructions were to be considered as a whole." *Id.* This Court upheld this disjunctive construction, concluding that the "'prurient interest' definition in *Bartanen* is [not] unconstitutionally overbroad." *Polykoff,* 816 F.2d at 1336-37.

Furthermore, in *Ripplinger*, 868 F.2d at 1054, this Court expressly recognized that it had "approved the *Bartanen* instruction." Based on those authorities, as well as its own analysis, the district court clarified for the jury that the phrase "morbid, degrading, and unhealthy" does not list separate criteria; instead, they are "descriptive terms that describe what is a prurient interest" as opposed to a mere candid interest in sex, and therefore, the jury need not find that the

34

movies satisfy all three descriptive terms to be "prurient." Gov't E.R. 341-42.

Defendant's attempt to distinguish *Polykoff* and *Ripplinger* is unpersuasive. On both occasions, this Court placed its imprimatur on a disjunctive instruction regarding descriptive terms used to clarify for the jury the meaning of "prurient." There is no basis to distinguish the district court's definition of precisely the same term, employed in precisely the same legal context, merely because a state rather than a federal statute was at issue, or because the definition at issue in *Polykoff* contained two additional adjectives.[11] Importantly, defendant fails to cite to a single case, or even any legal principle, suggesting that the district court's definition of prurient was in any way deficient on its face.

---

[11] Because the instruction was phrased in the disjunctive, the additional adjectives used in the definition of "prurient" approved by *Polykoff* make it *broader* than the definition ultimately employed by the district court here. Thus, if anything, the government was required to satisfy a higher standard of proof than required by *Polykoff*.

### 2. The District Court Acted Appropriately in Answering the Jury's Question.

Defendant argues that the district court should have, for the sake of consistency, purposefully answered the jury's question contrary to an answer already approved by this Court rather than proceeding "in accordance with the letter of the law." Br. 45. Doing so, however, would have only compounded any error contained in the original instructions. And this Court has previously rejected choosing consistency over legal accuracy. *See McIver*, 186 F.3d at 1131. Moreover, other appellate courts have affirmed convictions following trial courts instructing, following closing argument, that an element of the offense may be proved in the disjunctive, after initially instructing that it must be proved in the conjunctive. *See, e.g.*, *United States v. Cantu*, 185 F.3d 298, 305-06 (5th Cir. 1999) (holding that district court did not err in instructing jury, in response to a question, that element of offense could be proved in the disjunctive, notwithstanding initial jury instructions requiring element to be proved in the conjunctive); *United States v. Lueth*, 807 F.2d 719, 734, n.7 (8th Cir. 1986) (rejecting defense

36

argument that effectiveness of closing argument was undermined by supplemental instruction changing definition of offense element, in response to jury question, from conjunctive to disjunctive, where defendant had not argued that supplemental instruction misstated the law, and where closing argument did not depend on conjunctive reading of the charge).[12]

Defendant also contends that he delivered his closing argument in reliance upon the instruction provided by the district court. Br. 46-47. But he fails to identify a single instance during his closing argument in which he specifically relied on a conjunctive reading of the phrase "morbid, degrading, and unhealthy," or for that matter, even offered any analysis of that terminology. In fact, the only time he mentioned the phrase "morbid, degrading, and unhealthy" was when he directly quoted the jury instruction. At no point did defendant specifically argue to the jury that it must find that the movies meet all three descriptive terms in order to conclude that the movies appealed to a "prurient

[12] Defendant here has an even weaker argument than the defendants in *Cantu* and *Lueth*, because here, the supplementary instruction affected only descriptive terminology, rather than changing an element of the charged offense from conjunctive to disjunctive.

interest." Accordingly, the district court did not interfere with defendant's right to present a meaningful closing argument through its accurate recitation of law in response to a jury question.

## IV.  The District Court Did Not Abuse its Discretion by Allowing the Parties to Access Public Information Over the Internet Relating to Prospective Jurors.

### A. Background.

On the first day of trial, during voir dire, defense counsel informed the court that he believed that the government should not be allowed to "use extra means such as computer searches for the jury selection process." Gov't E.R. 142. The court asked counsel why he waited to raise this issue and had not raised it prior to gathering for court that morning. *Id.* Defense counsel replied that, because the court indicated at the first trial that the use of computer searches was permissible, defense counsel did not think the court would grant his request, so he was mentioning it at that time simply to preserve his objection for appeal. *Id.* Defense counsel added that he did not think the government should be able to use "a computer database" to help with voir dire and

that the government's FBI agent should not be allowed to sit at counsel table with the attorneys. *Id.*

The court overruled the objection as to the FBI agent's presence at counsel table, noting that the agent was the case agent and it was permissible for him to remain at counsel table to assist government counsel in every aspect of the case, including voir dire. *Id.* Regarding Internet searches, the court asked the government if the searches the government might undertake were publically available. Gov't E.R. 142-43. The government responded in the affirmative. Gov't E.R. 143. After this representation, the court overruled defendant's objection regarding publically-available Internet searches. Following the court's rulings, the issue of computer database searches was not mentioned again. [13]

---

[13] Defendant raised this objection during the first day of voir dire. Gov't E.R. 141-43. Prior to defendant's objection, the judge instructed the venire that the clerk would distribute the jury questionnaire for the venire to complete, at which point the court would dismiss them for the day. Gov't E.R. 140. The judge then held a sidebar outside of the hearing of the jury panel, and asked both parties whether they had any objections to excusing certain jurors who raised valid reasons for not being able to serve on the jury. *Id.* At this point, defendant's counsel preemptively objected to the government's use of the Internet to research prospective jurors. Gov't E.R. 141-42.

**B. Standard of Review.**

Trial courts are afforded broad discretion to determine the manner in which they conduct voir dire. *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). Accordingly, a district court's conduct of voir dire is reviewed deferentially, for an abuse of discretion. *See United States v. Garcia*, 739 F.2d 440, 443 (9th Cir. 2001).

**C. Analysis.**

Defendant claims that the district court abused its discretion when it allowed the parties to perform Internet searches for public information relating to prospective jurors. Br. 47-49. Defendant contends that the court's ruling gave the government a "tremendous advantage," notwithstanding the government's representation that it would use only public search engines to research prospective jurors. Br. 47. Defendant invites this Court to adopt a rule that "absolutely bars the use of computers for gaining access to jury information that is not brought in the courtroom for all to consider." Br. 47-48. As with his other arguments, this argument fails for a host of reasons. First, defendant has not pointed to any evidence in the record demonstrating

40

that the government ever conducted any Internet search in the presence of the jury. Second, even assuming that such searches were conducted, the district court did not abuse its discretion on the facts of this case because the procedure it adopted provided no advantage to the government and corresponds with the prevailing practice in multiple jurisdictions. And third, in any event, defendant has not demonstrated any prejudice.

1. Defendant's claim that the FBI case agent operated a computer at counsel table during the jury voir dire is unsupported by any citation to the record, and the record, in any event, reflects no such activity.[14] Br. 25. Defendant's claims to the contrary are based on conjecture.

2. In any case, the district court's decision to allow either party to use the Internet to research prospective jurors privileged neither party. Moreover, defendant does not identify, nor is the government aware of,

---

[14] The record is absent of such activity because the government did not operate a computer at counsel table during voir dire. The government can represent that the only searches that it undertook were Internet searches of publically-available information regarding potential jurors that took place after court had closed for the day. These searches were conducted at the United States Attorney's Office using search engines such as "Google" and "Bing."

41

a single jurisdiction that prohibits the use of the Internet to research prospective jurors, let alone controlling precedent suggesting that the district court misapplied the law. Accordingly, even if this Court sees fit to advise future trial courts to preclude the use of the Internet to gather information on prospective jurors, the district court's decision did not reflect an inaccurate view of the law, and this Court should affirm the district court's exercise of discretion. *Cf. Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) ("we uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently.").[15]

---

[15] Beyond appropriately exercising its discretion, the district court's ruling on defendant's objection was entirely in accord with the recognized best practices of conducting voir dire. Though no national guidelines exist to direct the use of technology to research prospective jurors, three ethical opinions have addressed the issue.

In 2011, the New York County Lawyers' Association Committee of Professional Ethics opined that it "is proper and ethical . . . for a lawyer to undertake a pretrial search of a prospective Juror's social networking site, provided that there is no contact or communication with the prospective juror." N.Y. Cnty. Law. Assoc. Comm. on Prof'l Ethics, Formal Op. 743, at 4 (May 18, 2011). Similarly, in 2011, the New York State Bar Association, noting that it is "common for lawyers to use the Internet as a tool to research members of the jury venire in preparation for jury selection," concluded that attorneys may research potential

3. Defendant has not, in all events, demonstrated any prejudice from the court's ruling. Defendant claims that permitting use of the Internet during the jury selection phase of the trial affected his "ability . . . to participate in voir dire." Br. 48. Nowhere, however, does defendant explain how allowing *both* parties to research publically-available information adversely affected his ability to "participate" in voir dire. Nor does defendant demonstrate that he was unable to access the Internet to research jurors, which is presumably the heart of the inequality he alleges. Instead, defendant complains (again, without factual support) of the case agent's purported proficiency with

---

jurors using social media services or websites. N.Y. City Bar Assoc. Comm. on Prof'l Ethics, Formal Op. 2012-2 (June 5, 2012). The Oregon State Bar Ethics Committee also endorsed the use of the Internet to research prospective jurors, comparing publically-available Internet data to in-print books and magazines, access to which is unequivocally available to litigants during voir dire. Or. State Bar Ethics Comm., Formal Op. No. 2013-189, at 3-4 (2013).

In addition, one jurisdiction now *requires* litigants to "use reasonable efforts [including Internet-based research] to examine the litigation history" of prospective jurors. *See Johnson v. McCullough*, 306 S.W.3d 551, 554 (Mo. 2012) (per curiam). The Missouri Supreme Court later codified this holding into Rule 69.025, which requires attorneys to research prospective jurors on the state's online court docket before the jurors are sworn. *See* Mo. S. Ct. R. 69.025(b) (2011).

computers, effectively asking this Court to penalize the FBI case agent for his skill as an investigator. This is akin to arguing that permitting the government to conduct legal research is improper in cases where government resources allow for more comprehensive Westlaw searches.

Defendant advances two further contentions, one of which conflicts with the record, and one of which is, at best, speculative. First, he claims that the government had access to "inside information." *Id.* The record does not support this allegation. On the contrary, when the court asked the government whether the government anticipated searching for only public information, the government responded, "yes, your Honor. It's publically available." Gov't E.R. 142-43.

Second, defendant claims that the government's use of the Internet was "extremely intimidating to prospective jurors," thereby violating his right to due process. Br. 48. Nothing, however, in the record reflects any expression of concern by a juror regarding anything that occurred during voir dire. Nor does defendant explain how any juror could even have been made aware of government Internet searches occurring outside the presence of the jurors. Defendant's

44

accusations are, at best, entirely speculative and therefore provides no basis for relief. *See United States v. Martinez*, 77 F.3d 332, 336 (9th Cir. 1996) (holding that defendant's claim was "too speculative to implicate his right to due process.").

45

## **CONCLUSION**

The judgment of conviction should be affirmed.

Respectfully submitted,

ANDREW G. OOSTERBAAN
*Chief*
*Child Exploitation and Obscenity Section*
*United States Department of Justice*
*Criminal Division*
*1400 New York Avenue, NW, Suite 6000*
*Washington, D.C. 20005*
*(202) 514-5780*

MICHAEL W. GRANT
*Trial Attorney*
*Child Exploitation and Obscenity Section*

JEFFREY ZEEMAN
*Trial Attorney*
*Child Exploitation and Obscenity Section*

46

## **STATEMENT OF RELATED CASES**

Pursuant to Ninth Circuit Rule 28-2.6, the United States represents that it is not aware of any cases related to the appeal addressed in this brief.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 8, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

JEFFREY ZEEMAN
*Trial Attorney*
*Child Exploitation and Obscenity Section*
*United States Department of Justice*
*Criminal Division*
*1400 New York Avenue, NW, Suite 6000*
*Washington, D.C. 20005*
*(202) 514-6037*

August 8, 2013

48

## **CERTIFICATE OF COMPLIANCE**

I certify, under Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, that this brief complies with the length limits set forth in Ninth Circuit Rule 32-4. The brief's type size and type face comply with Federal Rules of Appellate Procedure 32(a)(5) and (6). This brief contains 9,072 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii).

> JEFFREY ZEEMAN
> *Trial Attorney*
> *Child Exploitation and Obscenity Section*
> *United States Department of Justice*
> *Criminal Division*
> *1400 New York Avenue, NW, Suite 6000*
> *Washington, D.C. 20005*
> *(202) 514-6037*

August 8, 2013

49